UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 09-101-GWU


DEONNA FOLBERTH,                                                    PLAINTIFF,


VS.                                **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the

Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u>  <u>Accord,</u> <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Deonna Folberth, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a skin rash, chronic fatigue, and depression.  (Tr. 14).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Folberth retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).  The Appeals Council declined to review, and this action followed.

At the second of two administrative hearings, the ALJ asked the VE, Dwight McMillion, whether the plaintiff, a 37-year-old woman with unskilled work experience and a tenth grade education, could perform any jobs if she were limited to no working at heights or around moving machinery, had a "fair" (defined as "limited but satisfactory") ability to deal with coworkers and the public, and would be limited to routine, unskilled work with only intermittent public contact.  (Tr. 798-9).  The VE responded that there would be jobs at the medium, light, and sedentary levels which such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 799-800).

On appeal, this court must determine whether the ALJ's decision is supported by substantial evidence.  For the reasons set out below, the court finds that it is not.

09-101  Deonna Folberth

The plaintiff alleged disability due to a condition known as progressive systemic sclerosis, which she stated caused her skin to become hard and limited her movements.  (Tr. 49-50).[1]  She testified that in addition to her skin becoming tight, so that she could not move as well as she used to, she became tired easily and sometimes had pain.  (Tr. 767-9).  She was able to drive for only about ten minutes at a time, because of difficulty holding onto the steering wheel, could walk one-half block to her mailbox and back, and did very few household activities other than getting dressed.  (Tr. 769-71).  It would sometimes take her 35-40 minutes to use the bathroom due to cracking and bleeding in her private areas.  (Tr. 773).  Her treating rheumatologist, Dr. Feinberg, had prescribed a medication called Cupramine to retard the advance of the disease, but it could not cure it.  (Tr. 768).  She was also taking medications for depression and a medication for hypertension. (Tr. 786).

One of the issues raised by the plaintiff on appeal is that the ALJ made an improper credibility assessment, citing Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).  The ALJ's decision, after summarizing the plaintiff's testimony, states that

---

[1]Her treating rheumatologist, Dr. Howard L. Feinberg, diagnosed the progressive systemic sclerosis.  (Tr. 241).  This condition is defined as "a systemic disorder of the connective tissue characterized by induration and thickening of the skin, by abnormalities involving both the microvasculature and larger vessels, and by fibrotic degenerative changes in various body organs, including the heart, lungs, kidneys, and gastrointestinal tract.  The disease may remain confined to the face and hands for long periods or may be progressive and spread diffusely and become generalized."  Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1495-6.

"the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptom; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Tr. 17). The decision then goes on to state: "In terms of the claimant's alleged complaints, I found her credibility to be fair. The medical evidence and consultative examiners do not show any further limitations [than] set forth in the hypothetical." (Id.).

The <u>Felisky</u> court emphasized that an opinion explicitly finding that only the content of the medical record is insufficient to support the plaintiff's testimony is not consistent with the Commissioner's regulations. 35 F3d. at 1039, <u>citing</u> 20 C.F.R. § 404.1529(c)(2)("however, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.") The Sixth Circuit noted that the ALJ is required to consider several other factors as outline in the regulations, including daily activities, location, duration, frequency and intensity of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medication, treatment other than medication, and any measures used by the claimant to relieve pain. <u>Id.</u> at 1039-40.

The ALJ's statements do not represent a correct credibility analysis because, as in <u>Felisky</u>, it "explicitly finds only the content of the medical record insufficient to support" the plaintiff's claims.  <u>Id.</u> at 1039.

The court recognizes that despite the ALJ's indication that he would explain the reasons for his finding "below," he had discussed the plaintiff's testimony in preceding paragraphs.  (Tr. 16-17).  His summary of her testimony, however, does not shed any light or provide any independent reasoning for finding its credibility to be only "fair."  "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility to the claimant in connection with his or complaints 'based on a consideration of the entire case record.'" <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 247 (6th Cir. 2007), <u>citing</u> Social Security Ruling (SSR) 96-7p, p. 4.  The <u>Rogers</u> court noted that SSR 96-7p "also requires the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'  In other words, blanket assertions that the claimant is not believable will not pass muster . . . ." <u>Id.</u> at 248.  The court went on to criticize the ALJ's opinion for "focusing on purely objective evidence" and failing "to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications that Rogers has been

10

prescribed, the reasons for which they were prescribed, or the side effects Rogers testified she experiences from those medications." Id.

In the present case, the plaintiff was having so many side effects from her medications that all of them were temporarily stopped in a hospitalization in November, 2007.  (Tr. 360).  The ALJ did note the plaintiff's testimony that she had been taken off all of her medications "ex[cept] two."  (Tr. 17).  He did not explain how this would affect her allegation of fatigue.  Nor did his summary of her testimony, which included her allegations of being able to do few activities, give any indication of why she was not believable.  In sum, the credibility determination made by the ALJ lacks the specificity for subsequent reviewers required by SSR 96-7p.

Since the case is being remanded on this ground, the court makes no findings regarding the plaintiff's other issues on appeal.

The decision will be remanded for further consideration.

This the 8th day of September, 2010.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**